IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRENDA O. GITTENS, | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-2363-L (BH) |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| **Defendant.** | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of Title 28, United States Code, § 636(b)(1)(B), and the District Court's *Order of Reference*, filed May 10, 2005, this matter has been referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed September 2, 2005; *Commissioner's Motion for Summary Judgment*, filed October 25, 2005; and *Plaintiff's Reply Brief*, filed December 23, 2005. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that the final decision of the Commissioner be **AFFIRMED**.

## I. BACKGROUND[1]

### A. Procedural History

Brenda O. Gittens ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title II of the Social Security Act. On February 8, 2001, Plaintiff filed an application for disability benefits. (Tr.

---

[1]The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

at 27-36; 320-22.)  Plaintiff claimed she was disabled due to a shoulder and neck injury sustained

while working as a baggage handler for an airline.  (Tr. at 27-28.)  Plaintiff's application was denied

initially and upon reconsideration.  (Tr. at 329-33; 323-25.)  Plaintiff timely requested a hearing

before an Administrative Law Judge ("ALJ").  (Tr. at 25.)  A hearing, at which Plaintiff personally

appeared and testified, was held on April 16, 2002.  (Tr. at 338-399).  On July 22, 2002, the ALJ

issued his decision finding Plaintiff not disabled.  (Tr. at 9-17.)  The Appeals Council denied

Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review

did not provide a basis for changing the ALJ's decision.  (Tr. at 3-5.)  Thus, the ALJ's decision

became the final decision of the Commissioner.  (Tr. at 3.)  Plaintiff timely appealed the

Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on

November 2, 2004.

## B.  Factual History

### 1.  Age, Education, and Work Experience

Plaintiff was born on July 11, 1963.  (Tr. at 320.)  At the time of the hearing before the ALJ

she was 38 years old.  (Tr. at 244.)  She graduated from high school.  (Tr. at 34, 343.)  Her past

relevant work experience included work as a baggage handler for an airline.  (Tr. at 29, 344.)

Plaintiff last worked in August 2000.  (Tr. at 28.)

### 2.  Medical Evidence

Plaintiff injured her neck and right shoulder at work on August 17, 2000, when she tried to

remove a bag that had become entangled with another article on a baggage carousel.  (Tr. at 218.)

She finished work that day and the following day.  *Id.*

On August 21, 2000, four days after her injury, Plaintiff first consulted chiropractor Johann

- 2 -

Van Beest, D.C., of Crowne Chiropractic Clinic in Arlington, Texas. (Tr. at 191-99.) Plaintiff complained of pain in her spine, right shoulder, and right arm. (Tr. at 192.) Over the next week, Dr. Van Beest treated Plaintiff with chiropractic adjustments, ice, heat, and electrical stimulation.[2] (Tr. at 178-90.) Robert Kent, D.O., prescribed anti-inflammatory, analgesic, and muscle relaxant medications along with a cervical collar for Plaintiff. (Tr. at 178, 180.) Plaintiff also underwent a CT scan of the cervical spine on August 28, 2000. (Tr. at 174.) The CT scan showed a large right C6-7 disc herniation, a moderate right C5-6 protrusion, and a small left C4-5 paramedian protrusion. (Tr. at 174, 219.)

Dr. Van Beest referred Plaintiff to neurosurgeon Jacob Rosenstein, M.D., for further diagnosis and treatment. (Tr. at 172.) Dr. Rosenstein's first neurological examination of Plaintiff on September 6, 2000, revealed tenderness on the right greater occipital nerve and right trapezius; limited range of motion of the neck to 35 degree flexion, 35 degree extension, and 45 degree extension to the left and right; diminished right triceps reflex; and intact motor strength. (Tr. at 219.) Dr. Rosenstein's working diagnosis was right C7 radiculopathy, right C6-7 disc herniation, right C5-6 disc herniation, and a small left C4-5 paramedian protrusion. *Id.* He recommended that Plaintiff continue use of the narcotic analgesic, anti-inflammatory, and muscle relaxant medications prescribed by Dr. Kent. (Tr. at 220.) Dr. Rosenstein also prescribed a steroid and active physical therapy and ordered an electromyogram ("EMG") of the upper extremities to assess her muscle tissue. *Id.* He noted that surgery would be required if the EMG revealed active denervation. *Id.*

---

[2]Plaintiff frequently visited Dr. Van Beest from August 21,2000, through March 25, 2002. (*See* Tr. at 85-199; 272-299.) Although Dr. Van Beest performed spinal manipulations on some of her visits (*see e.g.*, Tr. at 136, 165, and 193), Plaintiff stated that most visits consisted of briefing Dr. Van Beest about her condition. (Tr. at 353.)

Plaintiff received her EMG on September 20, 2000.  (Tr. at 215.)  At her follow-up appointment with Dr. Rosenstein on September 25, 2000, he noted that Plaintiff's EMG revealed only right carpal tunnel syndrome.  *Id*.  Because Plaintiff complained that her pain was worse since her last visit, Dr. Rosenstein renewed her narcotic analgesic, changed her muscle relaxant, and prescribed an anti-depressant for its chronic pain effects.  *Id*.  Plaintiff indicated her desire to proceed with surgery, so Dr. Rosenstein ordered a cervical myelogram and post-myelogram CT in preparation for surgery.  *Id*.

Plaintiff received a cervical myelogram on October 23, 2000.  (Tr. at 214.)  Dr. Rosenstein reviewed the results with Plaintiff on October 30, 2000, and noted that the myelogram showed a right cervical radiculopathy, 3 mm right C5-6 disc herniation, and a 2 mm right C6-7 disc protrusion. (Tr. at 212.)  Dr. Rosenstein presented Plaintiff with the option of either trying to live with the pain and continuing with conservative care or undergoing surgery.  *Id*.  Plaintiff opted to proceed with surgery.  *Id*.  On November 29, 2000, Luis Mignucci, M.D., provided a second opinion and concurred with Dr. Rosenstein's assessment of Plaintiff's need for surgery.  (Tr. at 59-62.)

On February 9, 2001, Dr. Rosenstein performed surgery on Plaintiff.  Specifically, he performed anterior microdiscectomies and bilateral foraminotomies at the C5-6 and C6-7, anterior cervical fusion with bone harvested from the iliac crest at both levels, and anterior instrumentation from C4 through C7 with a titanium plate and four screws.  (Tr. at 70.)  Dr. Rosenstein's interoperative findings confirmed herniated discs at both C5-6 and C6-7.  (Tr. at 72.)

At Plaintiff's check-up six weeks after surgery on March 26, 2001, Dr. Rosenstein noted that Plaintiff's condition improved but that she experienced some neck spasms and an occasional stabbing sensation in her left arm.  (Tr. at 203.)  Dr. Rosenstein prescribed an anti-inflammatory,

a sedative, and a different muscle relaxant. *Id*. He also recommended physical therapy. *Id*. Three weeks later, on April 16, 2001, Dr. Rosenstein increased the dosage of her muscle relaxant and prescribed a steroid to address Plaintiff's continuing stabbing sensation and neck spasms. (Tr. at 201.) Dr. Rosenstein noted that Plaintiff's x-ray on March 26,2001 was within normal limits. *Id*.

On May 21, 2001, Plaintiff had another post-operative exam by Dr. Rosenstein. He noted that Plaintiff's pain continued and that she had not had any post-operative physical therapy. (Tr. at 271.) Plaintiff's range of neck motions were identical to those eight months earlier: 35 degree flexion, 35 degree extension, and 45 degree rotation to the right and left. *Id*. A motor exam showed that Plaintiff's strength was normal in all upper and lower extremity groups. *Id*. Dr. Rosenstein ordered a CT scan of the cervical spine and a Davis series of x-rays; he also recommended trapezial trigger point injections to be administered pending approval and again recommended physical therapy. *Id*.

Plaintiff's CT scan and x-rays, performed on June 20, 2001, did not show any abnormalities, and Dr. Rosenstein was not able to account for any of Plaintiff's symptoms at his June 22, 2001, examination. (Tr. at 266-268.) He noted that although Plaintiff complained of continuing pain in her neck and right arm, the x-rays did not show any movement at C5-6 or C6-7 and the fusion looked "solid." (Tr. at 266.)

In July 2001, Plaintiff began a course of physical therapy that lasted for approximately nine weeks. (*See* Tr. at 263.) She received the first of three monthly epidural steroid injections ("ESI's"). (Tr. at 260, 262, and 265.) Dr. Rosenstein noted at his August 15, 2001, examination that Plaintiff's " arm symptoms have resolved" and that x-rays taken on August 14 showed "excellent fusion at C5-6 and C6-7 without movement on flexion or extension." (Tr. at 263-64.) Dr.

- 5 -

Rosenstein noted that Plaintiff complained of left trapezial pain.  (Tr. at 263.)  He refilled her prescription medication and ordered three more weeks of physical therapy.  *Id.*

Six weeks later, on September 24, 2001, Dr. Rosenstein reiterated that Plaintiff's right radiculopathy had resolved, but that she experienced left trapezial pain.  (Tr. at 259.)  He prescribed a new medication for chronic pain and ordered an EMG.  *Id.*  The EMG performed on October 30, 2001, showed a left C5 radiculopathy.  (Tr. at 254-55.)  Concurrent nerve conduction velocity tests showed continuing right carpal tunnel syndrome and right ulnar neuropathy at the elbow.  *Id.*  Dr. Rosenstein sent Plaintiff for new cervical myelogram and post-myelogram CT studies.  (Tr. at 254.)  The studies, performed on November 26, 2001, showed a small ventral defect at C4-5, a 3 mm right C3-4 disc herniation, and a 2 mm left C4-5 protrusion.  (Tr. at 252-53.)  After discussing her treatment options, Plaintiff indicated that she wanted to proceed with a second surgery to increase her fusion at C3-4 and C4-5.  (Tr. at 252.)

John Peloza, M.D., provided a second opinion on January 9, 2002, regarding the new surgery option.  Dr. Peloza observed that Plaintiff experienced a mechanical axial pain that radiated into the left trapezial/parascapular region and did not extend beyond the shoulder.  (Tr. at 249.)  Dr. Peloza's notes state that Plaintiff had no pain on her right side (*id.*), but Plaintiff later asserted at the hearing that this was a mistake and that the notation was a misprint.  (Tr. at 375-76.)  Dr. Peloza disagreed with Dr. Rosenstein over the need for another surgery out of concern that a four-level fusion would not provide Plaintiff any relief for symptoms.  (Tr. at 246-50.)  Instead, Dr. Peloza recommended facet blocks and median branch blocks at C3-4 and C4-5 with a consideration of future rhizotomies if the blocks provided relief.  *Id.*  Dr. Rosenstein deferred to Dr. Peloza's recommendation and referred Plaintiff to High Point Pain clinic for the blocks.  (Tr. at 245.)

At Dr. Rosenstein's last documented examination of Plaintiff on March 5, 2002, he diagnosed Plaintiff with chronic left C5 radiculopathy, C3-4 and C4-5 disc protrusions, and right carpal tunnel syndrome and ulnar neuropathy by studies but not by exam.  (Tr. at 243.)  Dr. Rosenstein noted a more restricted range of motion, with a 30 degree flexion, 20 degree extension, and 20 degree lateral flexion left and right, and 40 degree rotation left and right.  *Id.*  Plaintiff experienced mild posterior cervical and trapezial pain with all movements.  *Id.*  Dr. Rosenstein also noted that Plaintiff was not scheduled to go to High Point Pain clinic for the facet blocks until late April.  *Id.*

### *3. Hearing Testimony*

A hearing was held before the ALJ on April 16, 2002.  (Tr. at 340.)  Plaintiff appeared personally and was represented by an attorney.  *Id.*  Plaintiff testified that she was 38 years old and had graduated from high school.  (Tr. at 343.)  She last worked as a baggage handler for an airline.  (Tr. at 344.)  Plaintiff stated that she stopped working on August 18, 2000, due to a work-related lifting injury.  (Tr. at 343.)  Plaintiff testified that she had not attended any kind of vocational rehabilitation program and that her income came from workman's compensation.  (Tr. at 345.)

Plaintiff testified that she experienced neck pain and carpal tunnel syndrome.  (Tr. at 345-46.)  She stated that she was constantly taking medication and that she needed to lie down afterwards.  (Tr. at 350.)  She testified that she was able to sit for approximately 30 minutes and that she drove when necessary.  (Tr. at 356-57.)  She also stated that she was unable to lift anything but was able to function in terms of eating a meal.  *Id.*

In response to questioning by her attorney, Plaintiff testified that she experienced a number of side effects from her medication, such as headaches, upset stomach, drowsiness, and loss of

concentration.  (Tr. at 358-59.)  Plaintiff testified that she spent the bulk of her day lying or sitting down and that she had gained approximately 50 pounds since the date of her injury.  (Tr. at 361-362.)

Based on a review of Plaintiff's medical records, the medical expert testified that a twelve-month "closed period" subsequent to when she was capable would be reasonable.[3]  (Tr. at 381-82.)  The medical expert calculated this finding from the onset of Plaintiff's injury in August 2000 until the records showed an indication of solid fusion in June 2001 and definite solid fusion by August 2001.  *Id.*  (Tr. at 381-82.)  The medical expert also noted that while Plaintiff's pain was an issue, her current pain was poorly defined as compared to the improvement that occurred after the operation as indicated by Dr. Rosenstein's notes.  (Tr. at 381.)  The medical expert suggested a six hour limitation on sitting and a lift restriction of 20 pounds occasionally and 10 pounds frequently.  (Tr. at 382.)  The medical expert also testified that Dr. Rosenstein's March 5, 2002, finding that Plaintiff's radiculopathy into the trapezius in her left arm and forearm would have to be better defined to make it a contributing factor to Plaintiff's ongoing symptomatology.  (Tr. at 389.)

The ALJ asked the vocational expert to assume a hypothetical person of 38 years with a high school education and a past work history of unskilled heavy labor.  The hypothetical person could perform sedentary light work provided that they were not required to reach overhead, crawl, climb, crouch, stoop, balance more than occasionally, or do highly repetitive fine motor manipulation more than occasionally.  (Tr. at 391.)  The vocational expert testified that machine tenders fit the criteria and that approximately 5,000 positions were available in Texas and 50,000 in the national economy.

---

[3]In the context of Social Security, a "closed period" is a finite period of time which started and stopped prior to the date of the administrative decision of disability status.  93 A.L.R. Fed. 161 § 1 (1989); *see* 42 U.S.C. § 1382c(a)(3)(A).

*Id.* Gate guards also fit the criteria; approximately 2,500 of these positions were available in Texas and 30,000 in the national economy. *Id.* The ALJ changed the hypothetical to give the person a sit/stand option on an occasional basis. The vocational expert testified that surveillance system monitors met the criteria and that approximately 2,000 positions were available in Texas and 45,000 in the national economy. (Tr. at 393.)

Under examination by Plaintiff's counsel, the vocational expert testified that a hypothetical individual who needed to lie down frequently during the day would not be able to engage in any competitive work. (Tr. at 394.) Plaintiff's counsel presented to the vocational expert a hypothetical individual who could sit a total of two hours but only for 60 minutes at a time, stand and walk a total of three hours but only for 30 minutes at a time, lift 10 pounds occasionally but never overhead, should not be involved in any repetitive action or be exposed to heavy machinery, and should not bend, squat, crawl, climb, reach up, stoop, crouch or kneel. (Tr. at 395.) The vocational expert testified that this hypothetical person would not employable on a full-time competitive basis in the regional or national economy.

## C. ALJ's Findings

The ALJ denied Plaintiff's application for benefits by written opinion issued on July 22, 2002. (Tr. at 12-17.) The ALJ noted that Plaintiff met the disability insured status requirements on August 17, 2000, the date of her injury. The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2000. (Tr. at 16, ¶2.) In addition, he found that Plaintiff had a severe degenerative disc disease of the cervical spine, but that she did not have an impairment or combination of impairments listed in Appendix 1. (Tr. at 16, ¶2.) The ALJ determined that Plaintiff's testimony concerning her functional limitations was not reasonably supported by the

objective clinical findings.  (Tr. at 16, ¶4.)

The ALJ concluded that Plaintiff retained the functional residual capacity to perform the physical exertional requirements of light work activity limited by the inability to reach overhead, and no requirement to crawl, climb or crouch, or do any bending, stooping or highly repetitive fine motor manipulation on more than an occasional basis.  (Tr. at 16, ¶5.)  Although Plaintiff was unable to perform her past relevant work as a baggage handler, the ALJ considered residual functional capacity and relevant vocational characteristics and concluded that both the medical-vocational guidelines for the full range of light work activity and full range of sedentary work activity directed a finding of not disabled.  (Tr. at 16, ¶10.)  The ALJ found a significant number of jobs in the national economy that Plaintiff could perform with her residual functional capacity.  (Tr. at 16, ¶11.)  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, at any time through the date of his decision.  (Tr. at 17, ¶12.)

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision.  *See id.*

### *2. Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during

the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to

show that there is other gainful employment available in the national economy that the claimant is

capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may

be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert

vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.

1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive

and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.  Issues for Review**

Plaintiff presents the following issues for review:

(1)      The medical expert testified that Plaintiff was unable to work for twelve continuous months between August 2000 and August 2001 and, therefore, is entitled to a closed

- 12 -

period of disability; and

(2)     The ALJ failed to apply the proper legal standard in finding that Plaintiff retains the residual functional capacity to lift 20 pounds, stand/walk for six hours, and sit for six hours during an eight-hour workday.

     (a)     The ALJ failed to apply the appropriate legal standard to weigh the opinions of Plaintiff's treating physician, Dr. Rosenstein;

     (b)     Weighed using the appropriate legal standards, the treating physician's opinions should have been granted great weight; and

     (c)     Plaintiff was prejudiced by the ALJ's failure to apply the appropriate legal standard to weigh the treating physician's opinions.

## C.  Issue One: Closed Period of Disability

Plaintiff first contends that the ALJ failed to consider whether she was entitled to a closed period of disability because the medical expert testified she was unable to work for twelve continuous months between August 2000 and August 2001.  (Brief at 9, 12.)  Plaintiff further asserts that no treating or examining physician released her to work before August 2001, the one-year anniversary of her injury.  (Brief at 11.)

The Social Security Act states that a claimant is disabled and entitled to benefits if the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity.  *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  In the case at hand, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act at any time through the date of his decision.  (Tr. at 17.)

- 13 -

At the administrative hearing, the medical expert testified that based on Plaintiff's medical records, a finding of a twelve month closed period of disability would be reasonable.  (Tr. at 381-82.)  A closer inspection of the medical records shows that Dr. Rosenstein noted on June 22, 2001 (ten months after Plaintiff's August 17, 2000 injury) that the fusion at C5-6 and C6-7 looked "solid." (Tr. at 266.)  He further noted on August 15, 2001, that Plaintiff's "arm symptoms have resolved" and that x-rays taken on August 14 showed "excellent fusion at C5-6 and C6-7 without movement on flexion or extension."  (Tr. at 263-64.)  At subsequent examinations, Dr. Rosenstein repeatedly noted a resolution of Plaintiff's work-induced right radiculopathy.  (*See* Tr. at 252, 254, 259, 263.) Thus, although the ALJ's determination that Plaintiff did not qualify for a closed period of disability conflicts with the medical expert's testimony that such a finding would be reasonable, substantial evidence in the record supports the ALJ's determination that Plaintiff's work-related injury to her neck and right shoulder and arm did not last for twelve months and thus did not qualify as a disability according to 42 U.S.C. § 1382c(a)(3)(A).  *Greenspan*, 38 F.3d at 236.

In support of her assertion that she was entitled to a closed period of disability, Plaintiff makes two arguments.  First, even though she may not be entitled to ongoing monthly benefits, she should have received benefits for the closed period between August 2000 and August 2001 during which she was injured.  (Brief at 10.)  Plaintiff cites to a number of out-of-circuit cases, all of which are distinguishable from the instant case because in each case, the claimant was disabled for a period of at least twelve months.  (*See* Brief at 10-11) (citing *Shepherd v. Apfel*, 184 F.3d 1196 (10th Cir. 1999); *Harris v. Sec'y of Dept. of Health and Human Servs.*, 959 F.2d 723 (8th Cir. 1992); *Woods v. Bowen*, 854 F.2d 288 (8th Cir. 1988); *Picket v. Bowen*, 833 F.2d 288 (11th Cir. 1987).)  As discussed in the preceding paragraph, substantial evidence in the record supported the ALJ's

determination that Plaintiff's disability did not last for twelve months.

Plaintiff also argues that no treating or examining physician released her to work before August 2001, the one-year anniversary of her injury. (Brief at 11.) Dr. Rosenstein's examination reports frequently noted that Plaintiff was unable to return to work. (*See e.g.*, Tr. at 254, 263.) However, a treating physician's determination that an applicant is "disabled" or "unable to work" is not a medical opinion, and as such, has no special significance in the ALJ's determination of whether an applicant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). "These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Id.* Furthermore, although Plaintiff's chiropractor, Dr. Van Beest, also occasionally noted that Plaintiff was unfit for work (*see e.g.* Tr. at 116, 297), the ALJ may accord less weight to the opinion of a chiropractor than to a medical doctor. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); 20 C.F.R. § 404.1513(d). Since a treating physician's determination that an applicant is "disabled" or "unable to work" is not a medical opinion, *a fortiori* a chiropractor's determination of disability is not a medical opinion.

Finally, Plaintiff's ongoing pain from her carpal tunnel syndrome in her right arm and pain in her left trapezial region do not constitute an extension of the period of pain induced by her work-related injury since the testimony of the medical expert and the records draw a distinction between Plaintiff's allegations of pain. With regards to Plaintiff's carpal tunnel syndrome, she testified that her symptoms pre-dated her August 17, 2000 injury, but that the injury exacerbated the pain. (*See* Tr. at 346.) As for her claim of pain in the left trapezial region, the medical expert testified that this pain was poorly identified and individualized by the patient. (Tr. at 381.) The medical expert further expressed doubt as to whether the pain in the left trapezial region was related to Plaintiff's

initial injury to her neck and right shoulder (Tr. at 381); he stated that the pain must be better defined to make it a contributing factor to the symptoms related to Plaintiff's August 17, 2000 injury (Tr. at 389). The medical records by Plaintiff's treating physician lend support to the medical expert's belief that the pain in the left trapezial region is not necessarily related to Plaintiff's initial injury to her neck and right arm and shoulder. (*See* Tr. at 263) (August 15, 2001 diagnosis of left trapezial pain after pain in right arm and shoulder resolved); (*see* Tr. at 271) (noting on May 21, 2001, that right trapezial pain was greater than left.) Thus, although Plaintiff experienced ongoing pain from her carpal tunnel syndrome in her right arm and pain in her left trapezial region, the objective medical evidence supports the ALJ's determination that Plaintiff's testimony concerning her pain is uncorroborated. (*See* Tr. at 15.)

Accordingly, the ALJ's determination that Plaintiff was not entitled to a closed period of disability, as defined by 42 U.S.C. § 1382c(a)(3)(A), is supported by substantial evidence in the record. *Greenspan*, 38 F.3d at 236.

## D. Issue Two: Residual Functional Capacity

Plaintiff next contends that the ALJ failed to apply the appropriate legal standard in finding that she retains the functional residual capacity to lift 20 pounds, stand/walk for six hours, and sit for six hours during an eight hour work day. (Brief at 1.) Plaintiff asserts that the ALJ failed to apply the appropriate legal standard to weigh the opinions of her treating physician. *Id*. Plaintiff further asserts that weighed using the appropriate legal standards, the treating physician's opinions should have been granted great weight. *Id*. Plaintiff also asserts that she was prejudiced by the ALJ's failure to apply the appropriate legal standard to weigh the treating physician's opinions. *Id*.

### 1.  Appropriate Legal Standard for Treating Physician

Plaintiff asserts that the ALJ failed to apply the appropriate legal standard to weigh the opinions of her treating physician.  (Brief at 1.)  An ALJ is required to evaluate every medical opinion received and to set forth the weight given those opinions.  20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with...other substantial evidence.'"  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).  However, if good cause exists, an ALJ may give a treating physician's opinions little or no weight.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Id*. at 456.  Thus, "[t]he treating physician's opinions are not conclusive."  *Id*. at 455.  "Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has the sole responsibility for determining a claimant's disability status.'"  *Martinez*, 64 F.2d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Martinez*, 64 F.2d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The Fifth Circuit in *Newton* held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the

treating physician's views under the criteria set forth in 20. C.F.R. § 404.1527(d)(2)." Thus, before

deciding not to give any weight to a treating physician's opinion, an ALJ must consider: (1) the

physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3)

the nature and extent of the treatment relationship; (4) the support of the physician's opinion

afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a

whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456 (citing 20

C.F.R. § 1527(d)(2)). If the ALJ fails to consider the requisite criteria, the case must be remanded.

*Locke v. Massanari*, 285 F. Supp.2d 784, 795 (S.D. Tex. 2001). However, the

court expressly excluded from the scope of *Newton* cases "where there is competing first-hand

medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-

founded than another" and cases in which "the ALJ weighs the treating physician's opinion on

disability against the medical opinion of other physicians who have treated or examined the claimant

and have specific medical  bases for a contrary opinion." *Newton*, 209 F.3d at 458. Thus, "*Newton*

is limited to circumstances where the administrative law judge summarily rejects the opinions of a

claimant's treating physician, based only on the testimony of a non-

specialty medical expert who had not examined the claimant." *Contreras v. Massanari*, 2001 WL

520815, at *4 (N.D. Tex. May 14, 2001); *see also Newton*, 209 F.3d at 458; *Pedraza v. Barnhart*,

2003 WL 22231292, at *5 (W.D. Tex. Sept. 15, 2003).

Based on a review of the hearing testimony and the ALJ's decision, Plaintiff has not shown

that the ALJ summarily rejected the opinions of Dr. Rosenstein, Plaintiff's treating physician. The

ALJ frequently and explicitly discussed Dr. Rosenstein's diagnosis and treatment with Plaintiff, her

counsel, and the medical expert at the administrative hearing on April 16, 2002. (*See* Tr. at 351,

353, 370, 372, 374-77, 385-89).  Dr. Rosenstein's opinions regarding Plaintiff's diagnosis and

treatment likewise were relied upon in the ALJ's rationale in his decision.  (*See* Tr. 14-15.)  Thus,

because the ALJ did not summarily reject Dr. Rosenstein's medical opinions, the considerations as

required by *Newton* do not apply.  *Contreras*, 2001 WL 520815, at *4; *see also Newton*, 209 F.3d

at 458.  Accordingly, the ALJ applied the appropriate legal standard to Dr. Rosenstein's opinions.

### 2. Weight Accorded to Treating Physician

Plaintiff's sole basis for her assertion that the ALJ did not apply the appropriate legal

standard to Dr. Rosenstein's opinions is that the ALJ did not accord controlling weight to a checklist

Dr. Rosenstein completed at the request of Plaintiff's counsel.  (Brief at 14; *see* Tr. at 236-41.)  The

checklist purports to address Plaintiff's capability to perform a variety of functions and what

restrictions, if any, should be imposed on those functions.  (*See* Tr. at 237-41.)

In response to a question proposing how long Plaintiff could sit, Dr. Rosenstein circled "two"

for the number hours of Plaintiff's full capacity.[4]  (Tr. at 237.)  Dr. Rosenstein further stated that

Plaintiff could sit for 60 minutes and stand for 30 minutes at a time without needing to change

position.  *Id*.  The form noted that Plaintiff could "occasionally" carry up to ten pounds but "never"

anything above eleven.  (Tr. at 238.)  The form also indicated that Plaintiff could not bend, squat,

crawl, climb, reach up, stoop, crouch, or kneel.  (Tr. at 238-39.)  Apart from Dr. Rosenstein's

answers to the attorney-provided checklist questions, none of his examination notes impose any

sitting, standing, or other restriction on Plaintiff's activities, with the exception of his non-medical

---

[4]The questionnaire asks, "In an 8-hour workday, claimant can: (Circle full capacity for each activity) (A) Sit; (B) Stand/Walk; (C) Lie Down/Recline."  (Tr. at 237.)  The respondent is instructed that the "[t]otal of A,B,C [is] not to exceed 8 hours."  *Id*.  The Court notes that even if a claimant's full capacity for each of the listed activities is eight hours, the restriction on the total hours requires the respondent to indicate a duration of less than claimant's full capacity.

opinion that Plaintiff was unable to return to work.  (*See* Tr. at 201-215, 243-271.)  Thus, the limitation on Plaintiff's ability to stand or sit is not well supported by medically acceptable clinical and laboratory diagnostic techniques as required by SSR 96-2P.

Despite the absence of physical restrictions on Plaintiff's activities in the treating physician's examination notes, the ALJ discussed a number of restrictions on physical activity with Plaintiff, her counsel, and the medical expert at the administrative hearing on April 16, 2002.  The ALJ and Plaintiff's counsel questioned Plaintiff about her daily activities.  (Tr. at 354-57, 360-63.)  The parties explicitly discussed the notations on the checklist.  (Tr. at 372-73.)  Based on the medical record and Plaintiff's testimony, the medical expert testified that Plaintiff was capable of restricted light handling of up to 20 pounds occasionally, but never overhead, and 10 pounds frequently.  (Tr. at 378.)  The medical expert further found that Plaintiff could sit for six hours cumulatively for periods of 90 to 120 minutes and that she could stand or walk for six hours a day for periods of 90 to 120 minutes.  *Id*.  Furthermore, both the ALJ and Plaintiff's counsel incorporated some of the physical restrictions indicated in the attorney-provided checklist, such as an inability to crawl or reach overhead, into their hypothetical questions posed to the vocational expert.  (Tr. 391-95.)

In his written decision, the ALJ found that Plaintiff's "testimony concerning her residual functional capacity was not reasonably supported by the objective medical findings." (Tr. at 16, ¶4.)  He then determined that Plaintiff "has the residual functional capacity to perform the physical exertional requirements of light work activity limited by the inability to reach overhead and no requirement to crawl, climb or crouch, bend, stoop, or perform highly repetitive fine motor

manipulation on more than an occasional basis.[5]  (*Id*. at 16, ¶5.)  These limitations incorporated the medical expert's hearing testimony as well as the restrictions Dr. Rosenstein noted on the checklist that was discussed at the hearing.  The ALJ determined that if claimant had the capacity to perform the full range of light work activity, she was not disabled.  (*Id*. at 16, ¶10.)  The ALJ also determined that if claimant were limited to no more than the full range of sedentary work activity, she also would not be disabled.[6]  *Id*.

Plaintiff asserts that the ALJ's finding that Plaintiff was capable of light or sedentary work disregards the lifting, standing, and sitting restrictions noted in the checklist.  (Brief at 12-13.) According to Plaintiff, the failure to incorporate the checklist's restrictions indicates that the ALJ did not give controlling weight to the treating physician's medical source statements.  This assertion, however, is not supported by the facts since the ALJ incorporated some of Dr. Rosenstein's restrictions into his findings.  The ALJ also references the medical evidence, much of which was provided by Dr. Rosenstein, in his findings.  Merely because a portion of a single medical record (the checklist's sitting restriction of two hours) was not given controlling weight does not mean that the ALJ did not give Dr. Rosenstein's medical opinions controlling weight.  The Fifth Circuit has determined that the ALJ does not have to specifically discuss all evidence that supports the decision or all the evidence that was rejected.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (declining to adopt the Third Circuit's rule that an ALJ must articulate specifically the evidence that supported

---

[5]Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  Light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10.

[6]Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  Sedentary work requires that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  SSR 83-10.

his decision and discuss the evidence that was rejected.)[7]  As the decision indicates, the ALJ relied

upon Dr. Rosenstein's medical opinions; the only excerpt of an opinion not replied upon was the

sitting restriction in the checklist.  This disregard of the sitting restriction by the ALJ was reasonable

since the two hour restriction was not reasonably supported by the objective medical evidence in the

record.

Finally, although the Fifth Circuit has not addressed the issue of checklists of functional

capacity supplied by claimants' counsel, other courts have found such checklists to be conclusory

and not entitled to controlling weight.  *Santiago-Rivera v. Barnhart*, 2006 WL 2794189, *9 (E.D.

Pa. Sept. 26, 2006) (treating physician's opinion, as expressed in an attorney-provided checklist

assessment, was not reasonably supported by the objective medical evidence in the record); *Mann

v. Barnhart*, 2005 WL 1995447, *5 (W.D. Va. Aug. 18, 2005) (treating physician's checklist opinion

does not merit more than minimal weight.)  Similarly, Dr. Rosenstein's assessment that Plaintiff

could not sit for more than two hours is not reasonably supported by the objective medical evidence

in the record.  For example, at no point in any of Dr. Rosenstein's examination notes did he impose

any physical restriction on Plaintiff, much less a sitting restriction.  (*See* Tr. at 201-215, 243-271.)

Additionally, on September 24, 2001, two days before completing the attorney-provided checklist,

Dr. Rosenstein noted that Plaintiff's course of treatment resolved her right radiculopathy and that

the three cervical ESI's eased her pain.  (Tr. at 259.)  Although the ALJ did not explicitly state his

---

[7]Plaintiff asserts in her reply that *Falco* is inapposite to the case at hand because *Falco* does not address the duty imposed by SSR 96-2p.  (Reply at 6-7.)  However, none of the cases cited by Plaintiff in rejecting *Falco* address a duty imposed by SSR 96-2p either.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).  Furthermore, each of the cases states that the ALJ cannot reject or ignore a medical opinion without an explanation, *see id.*, and, as discussed, the ALJ did not reject Dr. Rosenstein's medical opinions; he only declined to accept a conclusory statement contained in an attorney-provided checklist and unsupported by the medical record that Plaintiff could only sit for two hours a day.

reason for rejecting the sitting restrictions, the lack of substantial evidence supporting the checklist's conclusory finding of two hours is good cause for discounting this aspect of Dr. Rosenstein's opinion. *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).

Accordingly, because the ALJ considered Dr. Rosenstein's opinions at the administrative hearing and in his decision, he accorded the proper weight to the treating physician's medical opinions.

### 3. Prejudice Suffered by Plaintiff

Plaintiff's final contention is that she was prejudiced by the ALJ's failure to apply the appropriate legal standards to weigh the treating physician's opinions. (Brief at 24.) As discussed in the two preceding sections, Plaintiff has neither established that the ALJ applied the wrong legal standard nor that the ALJ did not accord the appropriate weight to the treating physician's opinions. The ALJ determined that Plaintiff retained the residual functional capacity to perform the full range of light work activity and full range of sedentary work activity. (Tr. at 16.) These findings led to the determination that Plaintiff was not disabled. *Id.*

Other than the attorney-provided checklist, Plaintiff has not provided any evidence showing that she is unable to perform light work activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (claimant has the burden of presenting evidence of disability). There is no evidence in the record, apart from the attorney-provided checklist, to indicate that Plaintiff cannot lift more than 20 pounds and thus is unable to perform light work activity. Additionally, the ALJ also found that Plaintiff is capable of sedentary work activity, which only requires a person to lift no more than 10 pounds at a time. (Tr. at 16; SSR 83-10.) Like the light work restriction, Plaintiff has not identified

any evidence in the record apart from the checklist that contradicts the finding that Plaintiff is capable of sedentary work.  Plaintiff asserts in her reply that because the ALJ did not specifically address the attorney-provided checklist in his decision, the Court is unable to ascertain whether the ALJ rejected the conclusory statements based on substantial evidence or improperly ignored the checklist.  (Reply at 11.)  However, the discussion of the checklist at the hearing as well as the ALJ's incorporation of some of the physical restrictions, such as the inability to reach or crawl, into his assessment of Plaintiff's residual functional capacity makes it clear that the checklist was not ignored.  (*See* Tr. at 372-73; 391-95.)

Since the ALJ properly relied upon the medical evidence in the record, the opinions of Plaintiff's treating and examining physicians, and the medical expert, he properly determined that she retains the functional capacity to perform both light and sedentary work.  Accordingly, Plaintiff suffered no prejudice from the ALJ's determination because she was not disabled.

### III.    RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be **AFFIRMED**.

**SO RECOMMENDED**, on this 19th day of May, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 24 -

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE