IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRENDA O. GITTENS**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:04-CV-2363-L** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a social security case. Plaintiff Brenda O. Gittens ("Plaintiff" or "Gittens") filed this action seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), who denied her application for disability benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(b), and an order of the court in implementation thereof, the case was referred to United States Magistrate Judge Irma C. Ramirez, for review and submission of proposed findings of fact and recommendation for disposition. On May 19, 2007, the magistrate judge filed her Findings, Conclusions and Recommendations (the "Report"), in which she recommended that the court affirm the Commissioner's decision and dismiss Plaintiff's Complaint. Plaintiff filed timely objections to the Report.

After an independent review of the pleadings, file, record, applicable law, the magistrate judge's findings and conclusions, and consideration of Plaintiff's Objections, the court determines that, as set forth fully below, the magistrate judge's finding that remand is not warranted is incorrect,

and hereby **rejected**. Accordingly, the court **remands** this case to the Commissioner for further proceedings consistent with this order.

## I.     Factual and Procedural Background

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for disability benefits under Title II of the Social Security Act. On February 8, 2001, Gittens filed an application for Social Security disability benefits, alleging disability due to a shoulder and neck injury. On April 16, 2002, the Administrate Law Judge ("ALJ") held a hearing on Gittens's application and she personally appeared and testified. The ALJ issued an unfavorable decision on April 16, 2002. Gittens filed a request for review of this decision and the Appeals Council denied her request on September 1, 2004. The ALJ's decision, therefore, became the final decision of the Commissioner. Plaintiff filed this action on November 3, 2004, pursuant to 42 U.S.C. § 405(g), contending that the Commissioner's determination that she was not entitled to disability benefits was not supported by substantial evidence on the entire record.

## II.     Analysis

### A.     Legal Standard

Judicial review in a social security case is limited to a determination of whether the ALJ's decision to deny benefits is: (1) supported by substantial evidence and (2) whether the proper legal standard was applied. *Austin v. Shalala*, 994 F.2d 1170, 1147 (5th Cir. 1993). Substantial evidence is defined as relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1977)). It is more then a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401; *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.

1989). The district court may not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The court must scrutinize the record, however, to ascertain whether substantial evidence supports the Commissioner's findings. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). A finding of no substantial evidence is appropriate only when there is no medical evidence or credible evidentiary choices in the record to support the Commissioner's decision. *Johnson*, 864 F.2d at 343-44; *Gutierrez v. Barnhart*, 2005 WL 1994289 at *7 (5th Cir. Aug. 19, 2005). If the findings are supported by substantial evidence, "they are conclusive and must be affirmed." 42 U.S.C. § 405(g).

A disabled worker is entitled to monthly benefits under the Social Security Act if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of twelve months. *Id.* § 423(d)(1)(A); *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985).

The Commissioner has promulgated a five-step sequential process to be used by hearing officers in disability cases. *See* 20 C.F.R. § 404.1520(b)-(f); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). The hearing officer is required to ascertain: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant has an impairment that "meets or equals a listed impairment in Appendix 1" of the regulations; (4) if the claimant has a "severe impairment" under the regulations, whether the claimant can perform his past work despite any limitations; and (5) if the claimant does not have the residual functional capacity to perform past work, whether the claimant can perform any other gainful and substantial work in the economy, considering his age, education, work experience, and

**Memorandum Opinion and Order- Page 3**

residual functional capacity. 20 C.F.R. § 404.1520. In the first four steps of the evaluation process, the claimant bears the burden of proving disability. *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987). The burden then shifts to the Commissioner at the fifth step to show that the claimant is capable of performing work in the national economy. *Id.* If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

      B.      **The ALJ's Decision**

Pursuant to the five-step sequence required by 20 CFR § 303.1520, the ALJ found first that Gittens is not currently engaging in substantial gainful activity because she has not worked since August 17, 2000, the alleged onset date of disability. Tr. 13. The ALJ next concluded that Gittens has a severe impairment pursuant to the second step. *Id*. Under the third step, the ALJ determined that Gittens's impairment does not meet or equal a listed impairment in Appendix 1 of the regulations. *Id*. At the fourth step, whether Gittens has the residual functional capacity to perform her past relevant work, the ALJ concluded that she did not. *Id*. at 15. On the final step of the sequence, whether Gittens has the residual functional capacity to perform other work, the ALJ concluded that she could. *Id*. Accordingly, the ALJ concluded that Gittens was not disabled and therefore not entitled to disability insurance benefits. *Id*. at 17. At the hearing, Gittens, medical expert George W. Weilepp, M.D., and vocational expert Donna Humphries testified. *Id*. at 12. Gittens was represented by an attorney. *Id*.

### C. The Magistrate Judge's Report

Gittens made two arguments disputing the ALJ's conclusions before the magistrate judge: (1) the medical expert testified that she was entitled to a closed period of disability; and (2) the ALJ failed to apply the appropriate legal standard in finding that Gittens retains the residual functional capacity to list 20 pounds, stand/walk for six hours, and sit for six hours during an eight-hour workday. The magistrate judge rejected both of these arguments and recommended affirming the Commissioner's decision and dismissing Gittens's case. Because Gittens's objections to the magistrate judge's report focus on the second argument, the court only considers the arguments relating to that contention.

On the second issue, the magistrate judge found that the ALJ applied the appropriate legal standard in determining Gittens's residual functional capacity. The magistrate judge determined that the ALJ did not "summarily reject[]" the opinions of Dr. Rosenstein, Plaintiff's treating physician. Report 18. The magistrate judge also found that the ALJ accorded proper weight to Dr. Rosenstein's medical opinions. *Id*. at 23. Finally, the court rejected Plaintiff's argument that she suffered prejudice from the ALJ's treatment of Dr. Rosenstein's decision. Accordingly, the magistrate judge recommended affirming the Commissioner's final decision.

### D. Plaintiff's Objection

Gittens has objected to the Report on the second issue, whether the ALJ applied the correct legal standard in determining her residual functional capacity and whether she experienced prejudice from the ALJ's alleged failure to do so. The Commissioner did not respond to Plaintiff's objections.

The dispute in this case is based on a difference between information on a physical assessment questionnaire filled out by Dr. Rosenstein, Gittens's treating neurosurgeon, and the

testimony of the non-examining medical expert at the April 2002 hearing. In September 2001, Dr. Rosenstein filled out a questionnaire and stated that during an eight-hour workday, Gittens could: (1) sit for 2 hours; stand/walk for 3 hours, and lie down/recline for 3 hours. Tr. 237. He also stated that she could lift and carry up to 10 pounds occasionally. *Id*. at 237-38. The doctor also opined that Gittens could not bend, squat, crawl, climb, reach up, stoop, crouch, or kneel. *Id*. at 238-39. To the contrary, Dr. Weilepp, the medical expert, stated that "she'd be capable of restricted light handling up to 20 pounds occasionally, but not overhead. 10 pounds frequently." *Id*. at 378. He also stated that Gittens could sit for 6 hours cumulatively during a day and that she could "stand and walk six hours of 90 to 120 minutes [at a time], but no continuous or frequent overhead." *Id*.

In making his decision, the ALJ considered both Dr. Rosenstein and the medical expert's opinions. The ALJ went through Gittens's medical history and referred both to notes and records from Dr. Rosenstein and a chiropractor. *Id*. at 14. He noted the opinions and reports made by Dr. Rosenstein throughout his treatment of Gittens. *Id*. Nothing in the ALJ's decision references the September 2001 questionnaire filled out by Dr. Rosenstein. After outlining Gittens's medical history, the ALJ states: "Dr. Weilepp opined that the claimant should not lift more than 20 pounds occasionally or 10 pounds frequently and should avoid repetitive fine manipulation, and to not perform any overhead work." *Id*.

In finding that Gittens had the residual functional capacity to perform other work, the ALJ relied upon the testimony of the vocational expert. The limitations put forth by the ALJ in his hypothetical questions to Ms. Humphries included "the residual functional capacity for light work, limited by the inability to reach overhead, and no requirement to crawl, climb or crouch, or do any bending, stopping or highly repetitive fine motor manipulation on more than an occasional basis."

*Id.* at 15. Ms. Humphries testified that such an individual could perform the jobs of machine tender or gate guard. *Id.* The ALJ accepted the vocational expert's testimony and concluded that Gittens is not disabled. *Id.*

Gittens argues that the ALJ did not given Dr. Rosenstein's medical opinions controlling weight, and that therefore he was obligated to weigh the opinions using the factors set forth in 20 C.F.R. § 404.1527(d): length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors. Gittens argues that the ALJ had a duty to apply these factors in weighing Dr. Rosenstein's opinions and relies upon *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), in support.

In *Newton*, the court held:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

209 F.3d at 453 (emphasis in original). Gittens argues that the ALJ rejected her treating physician's medical opinion regarding her limitations on sitting, standing, lifting, and carrying. She contends that Dr. Rosenstein's opinions regarding her specific limitations are separate medical opinions that were rejected by the ALJ when he based his decision on the medical expert's conflicting testimony. Pursuant to a Social Security ruling:

> Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a sever impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.

**Memorandum Opinion and Order- Page 7**

> Medical source statements submitted by treating sources provide medical opinions which are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment(s). Adjudicators must remember, however, that medical source statements may actually comprise *separate medical opinions* regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that *it may be necessary to decide whether to adopt or not adopt each one*.

SSR 96-5P, 1996 WL 374183, *4 (emphasis added).

The magistrate judge determined that the ALJ did not "summarily reject[]" Dr. Rosenstein's opinions and notes the many references to the physician's diagnosis and treatment of Gittens. The report also states that at the hearing, the parties discussed the notations on the checklist, and that the ALJ incorporated some of the restrictions in the attorney-created checklist into the hypothetical questions posed to the vocational expert. Tr. 372-73, 391-95. The magistrate judge notes that in the written decision, the ALJ included some of the checklist restrictions in his description of Gittens's residual functional capacity. Report 20. The magistrate judge also relies on *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), for the proposition that the ALJ does not need to specifically discuss all the evidence that supports his or her decision or all the evidence that was rejected.

Gittens responds that the magistrate judge misreads *Falco*, and that its holding is limited to an ALJ's duty to articulate reasons for rejecting subjective complaints of pain. She also points to two more recent decisions in this circuit that hold that an ALJ is required to explain why he or she is rejecting the medical opinion of a treating physician. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) ("No good cause appears in the ALJ opinion or in the record to justify the ALJ's failure to give 'considerable weight' to the treating doctors' medical evidence.") (citations omitted); *Myers*

**Memorandum Opinion and Order- Page 8**

*v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) ("The ALJ never presented good cause as to why he rejected [the treating physician's] opinion that Myers could sit for only four hours, and he never professed to having weighed the evidence and credibility of the conflicting evidence. The ALJ failed to accord considerable weight to the treating physicians' opinions, diagnoses, and medical evidence, without subjecting them to the above analysis or showing good cause for not giving them considerable weight.").

The court determines that Gittens is correct and Dr. Rosenstein's medical opinions regarding her ability to sit, stand, lift, and carry are separate medical opinions that ultimately were rejected by the ALJ. The ALJ's decision, however, does not address Dr. Rosenstein's opinions as stated in the questionnaire. The court further finds that the ALJ had a duty to explain why these medical opinions from a treating physician were rejected and to conduct the analysis required by 20 C.F.R. § 404.1527(d)(2), and that the magistrate judge's reliance on *Falco* was misplaced.

Two final arguments must be addressed. First, the magistrate judge found that the ALJ's disregard of Dr. Rosenstein's opinions on Gittens's limitations was warranted, in part, because the checklist was conclusory and other circuits have held that they are not entitled to controlling weight. Gittens argues that the Fifth Circuit has in fact allowed the use of such checklists, and that the cases cited by the magistrate judge are distinguishable because in each case the ALJ explained that the information on the checklist was inconsistent with other medical evidence. *See Santiago-Rivera v. Barnhart*, 2006 WL 2794189, *8-9 (E.D. Pa. Sept. 26, 2006); *Mann v. Barnhart*, 2005 WL 1995447, *5 (W.D. Va. Aug. 15, 2005). The court finds that these cases are distinguishable, and that there is no binding authority requiring the court to reject a checklist as a medical opinion. While on

**Memorandum Opinion and Order- Page 9**

remand, an ALJ may find that the checklist is inconsistent with other medical evidence, but that determination must be made by the ALJ, not the court.

Finally, the court determines that Gittens has demonstrated prejudice due to the ALJ's failure to consider Dr. Rosenstein's opinions about her limitations. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557, n.22 (5th Cir. 1995). During the hearing, the vocational expert testified that a hypothetical individual with the same age, education, past relevant work experience, and the limitations listed in the questionnaire would not be able to engage in a full-time competitive job in the regional or national economy. Tr. 395. If the ALJ had relied on this hypothetical, he might have concluded that Gittens lacked the residual functional capacity for any work and was therefore disabled.

## III. Conclusion

For these reasons, the court **sustains** Plaintiff's objection to the magistrate judge's finding that remand is not warranted in this case. Gittens has shown that the ALJ failed to explain why he rejected Dr. Rosenstein's medical opinions as to her limitations as required by 20 C.F.R. § 404.1527(d). Accordingly, the court **rejects** the magistrate judge's conclusion that remand is not warranted, **reverses** the final decision of the Commissioner denying disability benefits, and **remands** this case to the Commissioner for further proceedings consistent with this order.

**It is so ordered** this 29th day of February, 2008.

Sam A. Lindsay
United States District Judge